Case number 11-3005 and 20-3429, Jeronique Cunningham v. Tim Shoop. Court of argument is not to exceed 30 minutes per side. Mr. Benza for the appellant. Good morning and may it please the court. Michael Benza on behalf of Jeronique Cunningham. I would like to reserve five minutes of my time for rebuttal. Thank you. I would like to focus the discussion this morning on the first assignment of error addressing the issue of juror bias. Although if the court has questions about the other that have been raised, I'm happy to address those as well. As this court is aware, this is the second time that the case is before this court on review of the denial of Mr. Cunningham's petition. The issue in assignment one is the issue of juror Mike Sells' bias regarding two separate incidents that occurred during the trial. The first issue is the issue of her bias by consideration in bringing into the jury room extrajudicial information that she gathered as a result of her connection to the Allen County Children's Services and using that information in making a decision as to both guilt and to the sentence. The second issue of juror bias occurred and was developed during investigation in the habeas proceedings and that is that juror Mike Sells revealed during the deliberations that she had a personal and or professional relationship with the families of the victims in this case and that she had to find Mr. Cunningham guilty because of the nature of that relationship. These are two separate issues regarding her juror bias and yet they all revolve around one particular juror's connections. Regarding the first issue, her involvement in the issue of bringing extrajudicial information into the jury room. After the trial was over and after a sentence of death had been imposed, the investigator for in this case and Mr. Cunningham's stepbrother interviewed the jurors in Mr. Cunningham's case. It was during those interviews that juror Mike Sells told him that she had had contact with other social workers involved in Mr. Cunningham's case and Children's Services and that they had given her disparaging information about Mr. Cunningham and that she used that information. Sorry to interrupt you Mr. Benzo. Which co-juror are you referring to right now? I mean that supposedly heard this. So the issue of the extrajudicial information has not been confirmed by other jurors. Okay, that's what I thought. It was her statements regarding connections to the victims and the victim's families that has been confirmed by two separate jurors. Okay, I was confused about what you were saying. That's fine, go ahead. So just to clarify then, this came out during the interviews with the interviewer that she had information from other caseworkers but did it come out as to when she had the information from other caseworkers? Was that in the interview? It was not in the interview that was conducted and again that was the interview conducted by Cleveland Jackson's investigator not by an investigator for Mr. Cunningham. Those follow-up questions have never been addressed by Juror Mike Sells. I thought that she testified in a deposition that this all happened after the trial. She stated that she did not remember exactly when it was but she believed that it was after the trial. She also disputed that while she did not deny having had this information, her only statement regarding having that information was that it was not phrased by the investigator in the way that she would have phrased that information. So we still don't know the ultimate question from her as to when exactly she gathered that information. Even during the time period for that. I guess Mr. Benza, I'm a little bit confused as to this subclaim that Mike Sell had adverse information about Mr. Cunningham before trial. Mike Sell, as I understand her deposition testimony, adamantly denies that allegation and no other jurors support it. So I every fair-minded jurist to disagree with the Ohio courts on this claim and thus allow us to grant the writ. Well, so first the issue of what did the state courts decide. The state court decided in the initial post-conviction pleadings that Mr. Cunningham's petition did not rise to the level of stating a substantial enough claim to get to further factual development. So at the time that the post-conviction court had this case, the only evidence before the post-conviction court was the transcripts from the voir dire and the petition containing the affidavit of Mr. Erickson, Mr. Cunningham. State courts have never resolved whether or not the issue of her denial that only came in federal court was in fact grounds to deny the claim. So there isn't a fact-finding in that regard by the state courts. The state court at the first post-conviction decided the matter on the merits, is that correct? That is correct. Without an entry hearing or discovery. Okay, so we would have to say if we were going to grant relief on that claim because it was a merits determination, we would have to say that the state court acted unreasonably. Correct, yes. But we don't have any information at that point about the timing of when Mike Sell got information from the other caseworkers. That is correct and that is the issue regarding a unreasonable application of the Supreme Court's determination in Remmer that when a colorable claim of juror bias is presented, the remedy in court is to have a hearing on the issue of that bias. So the unreasonable application occurred in this particular case when the state court failed to have a Remmer hearing to resolve the issue as to whether or not there was in fact bias. And that was what the state court specifically determined. The trial court in post-conviction determined that it did not need to have a hearing in violation of the Remmer holding. Well, I guess I still am scratching my head a bit here because even after quite extensive discovery that was allowed in federal court, it remains the case as to that Mike Sell denied it and nobody else supports it. So how is it that no fair-minded jurist could say that it did not require further inquiry under Remmer when the further inquiry yielded basically nothing that would seem to allow a court to rule in your favor on this point? So first, in reviewing this under the limitations under 2254 D1, you cannot look to the evidence that was developed in habeas to determine whether or not the state court unreasonably applied Supreme Court precedent. So I get that. The first issue is the state court should have had this hearing. But even if we want to look to the deposition testimony, one missing aspect of the fact finder in our position would be the district court to see and observe Ms. Mike Sell's testimony in making a determination as to her credibility regarding her denials. She does deny that she considered this during the proceedings, but you cannot evaluate the credibility of her denials based on the cold transcript of the depositions. So that... On this subclaim, what relief are you seeking exactly? Because the record doesn't seem to support a grant of a writ on this subclaim. So are you looking for a vacater or something? So the remedy would be if the court does not believe that we've demonstrated bias on Juror Mike Sell's part, is to then return to the district court to conduct the Remmer hearing that has never been conducted. Furthermore, that would allow the additional discovery about where Juror Mike Sell obtained this information. There's a critical issue that has never been addressed, is the fact that if Juror Mike Sell went back to the Allen County Children's Services and investigated this case after the trial, which is where she claimed she did, she's then admitting to a violation of state law that prohibits looking into official state records of children's services for personal information or personal knowledge. Which is largely irrelevant to a federal court sitting in habeas for a year. It's not relevant as to... It is relevant, Your Honor, as to the issue of her credibility. That is, is she willing to say that, yes, I violated Ohio law by investigating this for my personal purposes? Or is she going to say that, no, I did in fact gain this during the trial or pre-trial and did not disclose that information during voir dire? I appreciate your straightforward answers to these questions. If I may, I would like to ask you a question about the other subclaim with respect to Juror Mike Sell. And this is the one, of course, that alleges that Mike Sell had some relationship with family members of the victims that would make it uncomfortable for her, I guess, to acquit in the case. And so this one was decided on... Is it your position that the procedural history is so complicated here? Is it your position that this issue was decided on the merits or not? No. In the state court? Yes. This claim was not adjudicated on the merits. This court, when we were first here several years ago, this court, on urging of the Attorney General, remanded this to the district court for determination of a rind stay and a return to state court to attempt to litigate this claim in state court. We opposed that order at the oral argument and in the briefing because there was no vehicle to litigate this claim in state court. But the court remanded this matter. We returned to state court. We filed a second post-conviction petition raising this claim, as well as a motion for leave to file a delayed motion for a new trial. The trial court and the court of appeals both determined that those on the merits and therefore the constraints of 2254 D1's amendments do not apply. Okay. That's why I wanted to clear up. So at least your view of it. So you can go ahead. Right. Counsel, why do you say that the Remmer hearing should take place in the district court as opposed to the state court? Because at this point, it's been clearly demonstrated by both post-conviction litigations in this court. The state court has no interest in conducting a Remmer hearing. Well, if that were the direction of this court to either release him or hold a Remmer hearing, I mean, either a new trial or a Remmer hearing, one can assume that they would choose the latter. I would assume if this court ordered the state court to conduct that type of a hearing, that the court would consider holding that hearing. My concern remains as it was on our first appeal here, that the state court does not have jurisdiction to consider this claim under Ohio's post-conviction statute. And therefore they simply could not exercise jurisdiction, even though they would want to abide by this court's order. That was the holding when we returned to state court in our second post-conviction that this does not satisfy Ohio's post-conviction successor statute, which requires newly discovered evidence, which this is, but also requires a constitutional error involving actual innocence. And a juror bias claim simply has nothing to do with the issue of actual innocence. So my concern on a remand to the state court would be that the state court would be forced to find under Ohio law that it has no jurisdiction to abide by this court's order. And that's why the remedy is to return this to the district court, to have the Remmer hearing that was not held in state court. We also want the Remmer hearing also vis-a-vis your second claim. Yes, yes, absolutely. The Remmer hearing could be on both issues, on one or the other. They are two independent claims. They just happen to involve the same juror engaging in two different aspects of misconduct or bias. So this court could bifurcate and say, there's no issue in regard to 1A, but we're going to remand for a hearing on 1B. You could send 1A and 1B back, but they're independent claims that have different factual predicates and even different legal standards regarding the nature of the issue in front of the court. We also don't know as to the merits of the second claim, what juror Mike Sell has to say about this. Procedurally, here's how this played out. The district court granted us an investigator who went out and conducted juror interviews. During that interview process, it was discovered through the statements of Juror Friedman and Wadler that these statements had been made by Juror Mike Sell, that she had a connection with the victim's family and had to find him guilty. The judge then authorized a deposition of Juror Mike Sell, limited to the issue of her bias under the first claim, that is her connection to children's services files. We then amended our petition with leave of the district court to bring in this second claim, conducted the deposition of Juror Mike Sell, at which point when she was asked about any connection to the victim's family, the attorney general objected and the magistrate judge overseeing the deposition refused to allow her to answer that question. The district court judge then authorized depositions of Juror Friedman and Wadler, who again reiterated that the statements made that they asserted that Juror Mike Sell had made regarding her connections to the victim's family had in fact been made during the jury deliberations regarding guilt. So we only have the statements from Juror Friedman and Wadler asserting that in fact Juror Mike Sell was biased. We've never been able to get either in a return to state court or in return to the district court after state court litigation, further factual development about exactly what Juror Mike Sell's relationship is or was with the victim's families. And that's why we requested on the return to both state court and district court, additional depositions of Juror Mike Sell and Juror Friedman and Wadler if necessary, but also access to the victim's family's children's services records. We'll easily demonstrate if Juror Mike Sell had in fact any connection with the victim's families. Those materials would prove or disprove the nature of this claim regarding Juror Mike Sell's bias. And that issue has just never been resolved. And it goes to the fundamental heart of Mr. Cunningham's Sixth Amendment right to a fair and impartial juror. Was the juror assessed on Fortier if they had any relationship or familiarity with the victim's family? No, that specific question was not. Now, this case took place in Lima, Ohio, Allen County. It's a very small rural community. All of the lawyers in the case, the prosecutors and the defense lawyer knew Juror Mike Sell and knew of her relationship and working for Allen County Children's Services. So it's not a secret that she worked there. And that in and of itself would not create a bias or a challenge for cause. But she was asked what is her relationship with the defendants? She said that she had not had any contact with Mr. Cunningham's case. She was asked about her relationship with the attorneys and said that that would have no impact. But she was asked a general question. Is there any other reason why you should not be? Why? What? Is there any other reason that you should not sit on this case? And her answer to that was, I don't think so. I mean, that's a pretty weak basis to say that she was lying. I mean, they ask us a question when you're being interviewed for the job that we have. Have you ever done anything that would embarrass the president? And it's like, well, who knows? I mean, if somebody wants an answer about a specific thing, or you want to make it clear that a veneer person needs to disclose a specific thing, isn't it fair to say you have to ask about it rather than expect Ms. Mikesell to figure out what the standard of impartiality is and then respond as to anything that might violate it? I agree. It could have been asked better by the court and by the lawyers in the case that could have directly asked about connections to the victim's family. They just did not. Although the victim's identities were known during voir dire. The names of the victims had been identified. The juror was advised about the nature of the case in the indictment, which specifically named the victims. So this was not a case where she would not have known who the victims were until some time further down in the proceedings. So she was aware of the names of the victims and did not disclose that she had this relationship. Again, I don't know, and we don't know the nature of this relationship. We don't know if she was the social worker for them. We don't know if she only had some tangential. We have simply no idea of the nature of this relationship. Suppose that she was the social worker for one of the victims. Would that have precluded her being on the jury? If I were the trial counsel, I would challenge her for cause that based on that nature of a connection, direct connection as the social worker for the victim's family. That to me would have been grounds for a challenge for cause. That nature of the relationship between a social worker and the families that they work with is a direct and personal interaction, giving that social worker a vested interest in how that family gets by. So she would have the same nature of relationship equivalent to being a family member of one of the victims in this case. What if she saw them in the hall as, you know, and knew that they were seeing another social worker in the building? Then that may not, that would not in and of itself rise to the level of demonstrating bias. I think we have made the claim of bias based on the information that we have, but we don't know everything about the nature of that relationship. I think it is perfectly appropriate for this court to want to know the answers to those questions. The way to get those answers is to send us back to the district court, do the discovery, have the hearing, and have these questions put directly to everybody involved to find out exactly what is the nature. Well, you've done discovery in the sense of you've asked questions in a deposition of Freeman, Wobbler, and Mikesell, right? All three of them have been deposed. As to the second issue, no. Juror Mikesell has never been deposed on the answers to the question of her nature of her relationship with the victim's family. We asked that question during the deposition, and the attorney general objected because at that time, the order from the district court interpreted by the magistrate judge was limited to the first issue, that is, her extrajudicial information. The magistrate judge did not allow us to ask the question or to allow Mikesell to answer any questions regarding contact and relationship with the victim's family. We had subsequent depositions of Freeman and Wobbler that did allow us to ask them about what it was that Juror Mikesell said regarding her relationship with the victim's family, and those were answered. So we know what Wobbler and Freeman say, and that is that Mikesell had a relationship with the victim's family. That's not what Wobbler says, really. Wobbler says, knew of the family. Correct. Which is different than, you know, like I know of plenty of people with whom I don't have a relationship, much less one that would require recusal. Sure. And I agree, Judge, that if it is simply I know of them, then that's not a grounds for bias, and our claim would fail on the merits. But we're not at the point to evaluate the merits of that, either from what Judge, from Juror Mikesell's position, or from what the Children's Services relationships demonstrate in their files. Well, what I just want to understand a little better is your argument as to, I mean, so who made the mistake here? We have a district court judgment before us. In your view, was the mistake as to this relationship subclaim, was it the district court's mistake, or was it a state court mistake? Given the litigation in state court, it is our position that it is the district court's error in failing to allow the factual development in their ability to litigate this claim. And what legal authority would you point to for the proposition that the district judge erred by resting on half a dozen depositions in a habeas case, as opposed to, I gather, as opposed to what, an in-court evidentiary hearing? Well, I think you could rely on depositions if Juror Mikesell was allowed to answer this question. So what legal authority bound the district court in this case to have an evidentiary hearing rather than to decide the claim based on the depositions, etc.? I would direct the court to the Michael Williams v. Taylor case, which is factually identical to this, where the issue of juror bias was not discovered until litigation and investigation in habeas. And the Supreme Court determined that that diligence in trying to find this claim satisfied 2254E in order to justify having an evidentiary hearing. And the way we resolve issues of bias, as outlined in Remmer, is to have an evidentiary hearing where the credibility of the witnesses can be determined. See, my time is about to expire if there are no further questions. On the bias claim, what would you have to show to prevail? So initially, we would first have to demonstrate the existence of the bias. After the issue of the bias, if there is a concern regarding application of Brett, we would have to demonstrate the harmfulness of the error in failing to remove her from the jury. Given the nature of the claim we have demonstrated, if it is as we have asserted, that she had a connection with the victim's family, that would demonstrate the harm required under Brett to justify relief under 2254. Thank you very much. What case would make that clear from the Supreme Court? So initially, we would rely on the supplemental authority that we submitted in the Nyhan case from this circuit, but also would look to the issue, again, coming from the Williams case, outlining the diligence which served as the ability to get to the merits. Thank you. Thank you. And bias, any relationship that goes beyond knowing about? I think it would depend, Your Honor, on the nature of the relationship. Bias isn't just because you know of the victims or you know the defendant. In certain communities, in smaller communities, everybody's going to know everybody. That in and of itself is not bias. Just like having pretrial publicity does not create an error of bias. It has to go to an outside influence that renders that juror incapable of fairly deciding the case on the merits presented in the courtroom. And if, in fact, Juror Mike Sell was compelled to find Mr. Cunningham guilty because of her relationship with the victim's family, that's biased. Well, what if she says in a deposition where you get to all the questions, she says, yeah, I was involved as a caseworker on one of the victim's family's matters, but I wouldn't let that influence me at all. Then what should happen? I think the dilemma at that part becomes the competing testimony of Freeman and Wobler, who says she did tell them that it was impacting her ability to be fair and impartial. And at that point, it becomes a credibility determination as to whether or not the fact finder, in that case, the district court, would determine that Mike Sell's assertions of impartiality were worthy of more credence than Freeman and Wobler's statements about Mike Sell's claims that it did. I don't think that's an accurate paraphrase of Wobler, just for the record. I think it is not as strong from Juror Wobler as it was from Juror Freeman. I agree. She doesn't say it. I mean, she said something like, I mean, this is all hearsay, but Wobler says Mike Sell said that she may interact with the family in the future. Correct. And that may demonstrate that there is no, in fact, no bias. Again, I think the answer ultimately is we simply don't know whether there was, in fact, bias or not. Thank you. Thank you. Thanks. Ms. Moore. Good morning.  My name is Margaret Moore, and I represent the Warren County District Court. In this case, I'd just like to point out first and foremost, the District Court correctly determined that Cunningham was not entitled to habeas relief on his juror bias claim either on either parts one or two. To directly contradict what Mr. Benza has put forth today, I'd like to cite to the record for Ms. Wobler's deposition on page 11408. She says, specifically, it was in a future tense. The information that Mr. Benza has put forth today is only put forth by juror Stacey Friedman. She also has said in her deposition that she gave the same information to the first investigator that she gave to the second investigator. So in 2003, when Gary Erickson interviewed her, she gave the same information to him that she gave to Tom Ray in 2008. She also, in her deposition, she cites that she doesn't exactly know word for word what Mike Sell says during deliberations. And additionally, the person that would know what she said in the deliberations is juror Mike Sell. And juror Mike Sell has adamantly and unequivocally stated that she did not participate in the deliberations with knowledge of Cunningham, his family, or anything from any social workers that she worked with at the time. Well, Ms. Moore, opposing counsel is making the argument, at least before us, or emphasizing the argument that not so much that the record supports a determination of bias, perhaps, but that the district court used its discretion, presumably, in failing to conduct an evidentiary hearing based on Freeman, what she said, as opposed to relying on a half a dozen depositions and a fair amount of discovery that had happened over the years. So what's your response to that specifically? Well, Your Honor, the discovery that was done was sent back to state court. The state court considered that in addition to the briefs, there was an argument held at state court to discuss Mr. Benz's brief and the state's brief regarding these depositions and this new, quote unquote, newly discovered information. I do think the warden's position is that it does lie with the state court to determine whether or not in the post-conviction relief procedural posture that whether or not discovery was permitted in this case. The discovery that was done in district court is a different standard under the habeas standard. Right. And Mr. Benz says that the district court was ultimately obligated under 2254E to hold an evidentiary hearing. And I'd be interested in your response to that argument in particular. Well, I think the warden's position is that the burden of rebutting the presumption of correctness is by clear and convincing evidence, and he has no evidence to present to the district court. Is there, as I said before, in the procedural record in this case is unusually complicated. Is there a state court factual finding with respect to these bias claims that you would point us toward? So there is a state court finding that these depositions are inadmissible under rules of evidence 606B. OK, but that's not particularly germane to the 2254E issue. I thought you were referring to a state court finding on the merits, so to speak, about the bias or not. Your Honor, so the state court in the remand where it goes back to state court in 2015 finds that there is no allegation of bias or misconduct that violated his constitutional rights. So the merits of that is that they already had the depositions and the affidavits. They went back and looked at this with the arguments that Mr. Cunningham and the state made and had oral arguments on that and found that there was no merits to the claim. You're saying that the second state post-conviction court decided the case on the merits? If I could get one minute to review my notes, Your Honor. Sure, sure. Might be page ID 3031. So that is what I have as well, page ID 3031. Even if he could support that he was unavoidably prevented from discovering these facts, which he cannot prove, he would not have been found a reason that no reasonable fact finder would have been found him guilty absent the alleged bias of misconduct by myself. So under the statute, he can't satisfy A or B, and he has to satisfy both. And that was on both? That was just on the second claim, right? Well, Your Honor, I think Mr. Benza is trying to differentiate between the two, but they're the same allegation. The allegation is that she knows about this information and has relationships while she's deliberating, and she has unequivocally said in her deposition that she neither looked at the information while deliberating, she did it afterwards, and that she didn't know Cunningham. And the only information that we have before the court is that one juror, which is Stacy Friedman, said that she heard her say these things, but there's no other corroborating evidence of that. Additionally, excuse me, because those are two different claims. The one about knowing Cunningham or his file or whatever, that's the first one. The second one wasn't about knowing Cunningham. It was about knowing the family, the victim's family. Yeah, I see your point, Your Honor. And the warden would submit that it's the same statements that these are coming from. There's not a new statement that she says, I know the victims and I looked at this stuff. It's all the same statement that Juror Friedman is coming up with, which is not corroborated by any other juror on this jury. Isn't that why you have Remmer hearings? It is, but the Remmer hearing would have to present a colorable claim, and that's what the state court found is that it's not a colorable claim. So because he can't support A and B, there's no reason to have the Remmer hearing under Ohio Revised Code 2953.23. And if we were to conclude that Cunningham's entitled to a Remmer hearing on one or both claims, where should that take place? And is it even possible that it could take place in state court? The warden's position is that it is foreclosed under state court because he can't submit both A and B under 2953.23. However, the warden's position is that the district court correctly found that he wasn't entitled to a Remmer hearing under the habeas laws. Okay, if we were to conclude that there has to be a Remmer hearing, do you agree with Mr. Benza that it has to take place in district court because given the alternative, of having a new trial or a Remmer hearing, the state court would say we just don't have any way of conducting a Remmer hearing? The warden's position is that he's not entitled to a Remmer hearing, Your Honor, but I do see what you're saying and that it would have to occur at the district court if it was ordered because the warden's position is that he's not entitled to one at the state court. What about the warden's position about whether he's entitled to a hearing in federal court? The warden's position is that the district court found correctly that he wasn't entitled to a Remmer hearing. The discovery was completed and it didn't present a colorable claim. The district court additionally found on the merits of this claim after it went back to state court that is both procedurally defaulted and alternatively meritless. Do you contest the assertion that counsel was not able to ask Juror Mike Sell about the second claim? Your Honor, Mike Sell's deposition did occur before the depositions of the other two jurors, Friedman and Worbley. However, when asked if she had information regarding this claim that she looked up people during deliberations, she was asked, did you ever relate any of this information to the other jurors? And she answered affirmatively, absolutely not. Additionally, there were objections which were sustained, so the questioning was limited. However, it did go to the same, I mean, it's the same statements that we're talking about. There's not new information that she made different statements. It's one group of statements that she said during the time of deliberation. Well, I'm a little confused. Were they or were they not permitted to ask her about her relationship with the victim's family? I don't think that was a topic of discussion during the deposition. No, Your Honor. Well, I mean, what did the magistrate judge forbid such questioning? I think is the more, I mean, that's I think what Judge White's asking among other things. Your Honor, so in my notes, I don't have specifically what the objection was, but I do recall that there was a sustained objection to Mr. Benz's line of questioning during the deposition, and that would be in or around page 11426. I can bring that up on my computer if you give me a moment. The district court said that state courts had an adequate and independent state ground for rejecting this particular claim. Is that, am I accurately understanding the state? I'm sorry, Judge Gahan's opinion. Did you say inadequate or adequate and independent? Yes, Your Honor, it is an adequate and independent state ground in that under Ohio revised code 2953.23, you have to be able to meet both prongs of it. He can't meet one nor can he meet the other. Can you walk us through that? I mean, just explain, I just would like to hear your argument about the adequacy and independence of the state ground of decision as to this relationship claim. Yes, Your Honor. So under Ohio revised code 2953.23, both A and B of part one apply. You have to find that the petitioner was unavoidably prevented from discovery of the facts upon which he relies to present his claim for relief. Under that prong, the deposition of juror Friedman brought forth that she had brought this information to the investigator Gary Erickson in 2003. So therefore, Cunningham knew about this information in 2003. She then says additionally that she said the same thing to the second investigator in or around 2008, which is Tom Ray. So because he can't satisfy the first prong, even if you assume that he can satisfy the first prong, moving on to the second one, the petitioner has to show by clearing convincing evidence that but for a constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted of. In this case, there's overwhelming evidence that all the other jurors that were investigated or interviewed by the investigator in 2003 found the evidence in the case convincing. So it's not, they weren't swayed by one juror or another. They found that, you know, the five remaining victims that were shot in this crime, identifying him was more than enough. So just on the first part of what you just described, so I mean, there was this investigator early on, who I gather talks to Freeman, and Freeman gives kind of a paraphrased version of what she says in her deposition later. And so your point, and I think perhaps to some extent, the district court's point is, she should have pursued this then. But we're he should have. But But he did, right? Yes, Your Honor. So now the idea that we're going to do this 20 years later, is, you know, there might be good reasons why this should have been pursued earlier. Was this information from Freeman in the investigator's report in 2003? No, Your Honor, it was not. But in her deposition, she testified on page 11-379. She says, I'm sure I just discussed it with Erickson, who is the initial investigator from 2003. She also, on page 11-377, she says Erickson left out the stuff about Mike Sell. So how would how would Cunningham's counsel know from reading the Erickson report, that things were left out from Freeman's discussions with Erickson? I, Your Honor, I don't know that they could find that from reading the report. But in talking to the investigator, they certainly could. And in following up with those jurors themselves, they certainly could have. Again, it's not Cunningham's investigator, it's his co-conspirator, co-defendant, Cleveland Jackson. So you're saying then, if I understand it correctly, that although the Erickson report in 2003 did not give information about either from Freeman or from Erickson, summarizing Freeman, did not give information. Nonetheless, there was a duty on Cunningham's lawyer's part to do further investigation based on what was actually in the Erickson report? The warden's position is that that information was available to them at the time. Whether or not it so that the statute, the Ohio Revised Code statute says unavoidably prevented. So the information of these jurors that were investigated was out there. His investigator could have talked to these people and asked them questions. And presumably, if he had done so, or she had done so, Freeman would have said the same thing that she, when deposed, had said that she said to both investigators in 2003 and 2008. But what was there in the report of Erickson that tipped Cunningham's lawyer off that this further investigation should be done? I don't know the answer to that, Your Honor. The, well, I should say, Your Honor, the information that Mike Sell presents ostensibly to the investigator is what would direct him in that direction. So she says, the investigator says that she, she says the statements about him having a bulging vein in his neck and those things. So that's where the investigation should have gone towards the other jurors and whether or not she knew that information at the time of deliberation or had done the investigation. Additionally, if I could add... So just to clarify one thing, that had to do with her knowledge of Cunningham, right? As opposed to her knowledge of the victim's families. Yes, Your Honor. However, the knowledge that she works for Children's Services as an investigator is out there through the voir dire and this investigation. I think in that, I don't have a specific citation to that investigation for what she said, but her statement is that she worked at Children's Services for a, as an investigator at that time. On this whole issue of this 29-53-23 or whatever the section is. I mean, it's, I mean, we've said, the Supreme Court has said many times, right, that we're not here to review de novo state court determinations on procedural issues, right? Yes, Your Honor. And that's what Judge Gahn said. So, I mean, do you have a position as to whether we ought to be doing this sort of searching de novo review of the state appellate court's application? I mean, don't we just see if they're basically applying it in good faith? And otherwise, I mean, Supreme Court has told us we don't really get into this. Yes, Your Honor. The warden's position is that you're absolutely correct that it is not a de novo review of the information presented to state court and that it is a doubly deferential standard under AEDPA. So, if the court finding it has been a decision that is not contrary to or an unreasonable application of clearly established law or that it didn't result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented, it stands. I mean, you're presumably more knowledgeable than most of us are with respect to the Ohio procedural law. So, can you just summarize for us why you believe that the Ohio Court of Appeals determination that this claim was procedurally defaulted under their adequate and independent rule, why that was a fair application of that rule in this case? So, Your Honor, I would go back to the discussion we had earlier. It's a fair of 29, 53, 23, North. Can you satisfy the second? There's an overwhelming amount of evidence that the jurors were influenced in their deliberations by the evidence that was presented in court. There's a minuscule in comparison amount of evidence that there was any kind of juror bias or influence. And in the deposition of Juror Mike Sell, I would posit that it's a testament to her credibility that she admits to breaking Ohio law to look up his information after the fact. In fact, in her deposition, she rather adamantly says, after the trial was completely over, I looked through the files. At that time, paperwork was not what it is now. It's 2003. So, it's not in the work from home environment that we have everything digital. So, it was more vague than what we are used to. But I think that goes to her credibility in that she admitted to that knowing that it is against Ohio law. I would like to just sum up our argument in that, as I stated before, this is not a separate set of allegations for what was said in deliberations. It's one juror that says she mentions things. She being Juror Mike Sell mentioned things about her job. And there's significant evidence to refute the fact that she did not. So, the warden's position is that the district court found correctly that Cunningham is not entitled to habeas relief on either part of his juror bias. I just lost you. You said there's ample evidence that she did not say anything about her job. So, the evidence is that Juror Mike Sell's deposition, she says she looked it up afterwards. And Juror Wobbler's deposition, she says she mentions it in a future tense. The only evidence that she said anything about looking up people or relationships comes from one juror. The other 12 jurors don't support that. There's no other corroborating evidence, Your Honor. Okay, but only two jurors were deposed, right? Yes, Your Honor. However, there were seven jurors interviewed by Mr. Erickson in 2003, which is in that investigation. So, that report says all the other jurors denied hearing everything? It is absent on that point, Your Honor. So, all the other jurors point to the evidence that was presented to the court rather than what was said during deliberations. So, the other four jurors that were interviewed say the evidence that was presented to the court during the trial is what I used rather than I was influenced by other jurors. Okay, but that's different from saying nobody said anything. Yes, Your Honor. So, which did the report say? Did those jurors deny hearing Mike Sell say anything about either Cunningham or the victim's family, or did they say nothing she said made a difference? Those jurors don't mention Mike Sell at all, Your Honor. And likely that's because this report was being done to try to figure out what should be done in the subsequent trial of the co-court in the crime as opposed to being done for a purpose of figuring out what went wrong with this jury particularly. It was done by Cleveland Jackson's investigator. Yes, Your Honor. So, hypothetically, if we had one juror, Freeman, who says definitively that Mike Sell said that we need to convict because she will not be able to hold up her head when she has to deal with the victim's families after the trial. Hypothetically, that's a clear statement that I'm, I have evolved here. Would that be enough to entitle Cunningham to a is that not a prima facie case of an extraneous influence on the jury here? It may be, Your Honor, but that is not the case here. So, Juror Freeman states that she doesn't remember what she said word for word. That's what she said in her deposition. So, hypothetically then, if there were a Remmer hearing and Freeman were to say exactly what she said in her deposition that she doesn't remember the exact words but she believes that Mike Sell said that she couldn't hold her head up if with the victim's families if she didn't vote to convict. Hypothetically, then, would that be enough, A, for a prima facie Remmer hearing and B, if that was the statement at the Remmer hearing, would that be enough to say that there was a violation of the right to an impartial jury? The warden's position is that it would not be primarily because those are not the facts here, Did anyone say she couldn't hold her head up? No, Your Honor. None of these jurors said anything to that effect. Both Juror Freeman and Wobler were asked specifically from Thomas Madden about whether or not they voted to convict this person and if they still sat well with that conviction. Okay. Thank you. Thank you. Thank you. Mr. Benza, your rebuttal. Thank you. A couple of points on rebuttal. First, if you look at record ID 11427 and 28, that is exactly where I asked Juror Mike Sell of any connection that she had to the victim's family. The Attorney General objected as beyond the scope of the authorized deposition and the magistrate judge upheld that objection and refused to allow that line of questioning to develop for the record. So, Juror Mike Sell has not ever answered the question about her nature of her relationship with the victim's family. Additionally, the Attorney General ignores the fact that the order for remand came at their suggestion during the last litigation before this court. It was their position that there were in fact were state vehicles to litigate this claim. The warden is now in front of this court arguing that Mr. Cunningham defaulted his claim because he failed to satisfy the procedural process. That's because there is no procedural process. And this court is obligated to look at any issue of procedural default to evaluate whether or not it is an independent and adequate rule to allow protection of Mr. Cunningham's constitutional rights. And Ohio law simply prohibits any successor post-conviction petition predicated on newly discovered evidence unless that claim goes to actual innocence. And that can never be satisfied on a juror bias claim. So, even though we did return to state court, we got exactly the state court that we expected. That we could not in fact bring our 2016 Ohio Court of Appeals decision in its paragraph 23, even were we to consider Cunningham's arguments, we would conclude he has not shown that no reasonable fact finder would have found him guilty or found him eligible for death sentence. And your opponent, I believe, is citing that to say that there was a merits ruling. That is not a merits ruling, Your Honor. That is the ruling required as a predicate to having the merits of your successor post-conviction heard. That is 2253 23B2. That's exactly what I wanted to ask you about. Why isn't that determination adequate in an independent state-grounded decision as the district court said? Well, it is a finding that we cannot litigate this claim. I mean, we're talking about a procedural ground of decision, which is what we're usually talking about with adequate and independent. We're often talking about in the habeas context with adequate and independent state grounds. As you know, this Ohio statute 2953.23, it says to overcome a lack of diligence, you have to show two things. And one of them is that no reasonable fact finder would have found the petitioner guilty of the offense of which he was saying that on this record, the petitioner did not make that showing and therefore, they deny relief. Was it a pretextual application of their procedural statute? No, it is a literal application of the statute. But it's our position that you can only procedurally default a claim if there is a vehicle for you to present that claim. And that's the situation that face here. There is no procedure. So I mean, but we're not doing a de novo review of the court's application, the Ohio court's application of 2953.23. So this is the unusual circumstance where state law qua state law actually matters in a habeas case. And so, I mean, you know, where and their their application of it has to be almost pretextual. It's like a sham. And so, you know, what, what state law did they apply in that manner, because I read that opinion, and it doesn't seem like they're, you know, like it's a sham. Well, I would I would beg to differ, Your Honor, it because this is not a procedural default where the state improperly applied a in and of itself is an independent and adequate rule to provide for vindication of the rights, right, I will simply says that they have no interest in hearing and provide no process for hearing a newly discovered non innocence claim. There is no procedure to default, because there is no procedure ab initio. That's the circumstance that we face in this case. You have a case that you would use to support this principle that you're outlining here? Absolutely. I mean, we can return to ex parte hawk, where the court recognized that the state must provide a process for vindication. I would look at also direct the court to Stone versus Powell, which finds that Fourth Amendment claims in which the state provides an independent and adequate vehicle for litigation prohibits the granting of relief in federal court if that process is abided by. So the process of independent and adequate is a federal question for this court to review to determine the legitimacy of a procedural default. Sure. I'll tell you though, this statute doesn't look a whole lot different than our own 2255. It's the idea that you can't bring a second or successive petition, unless something unavoidably prevented you from bringing it in the first instance. And I mean, they have this clear and convincing thing. I mean, are we going to say that that's like illegitimate, out of bounds, not permissible and sort of American constitutional democracy? Well, Your Honor, I would direct the there is in fact, a thing called a second in time first petition, in order to avoid the very suspension of the writ problem created by the successor statute in the habeas cases. So this would be an extension of that case? No, Your Honor, we're not asking to extend it to a state court process. We asked the state court to apply that same logic in order to validate Ohio's post conviction process to recognize that there will be post conviction claims that through no fault of the defendant, as this court has already determined on two separate occasions, the district court determined on three separate occasions, that Mr. Cunningham was diligent in trying to locate this claim. The Ohio law simply doesn't provide a vehicle for a defendant who discovers any claim beyond actual innocence to bring that claim to state court. Okay, I understand. I appreciate your clarification. That means there's no state court process for us to default. There are no further questions. We ask that the court remain to the district court, either for the granting of the writ or the alternative for holding of a hearing and factual development on this issue, as well as the other issues in our brief. Thank you. Thank you. Thank you both for your argument, and the case will be submitted.